UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 96-2133



CIV - UNGARO - BENAGES

MAGISTRATE JUDGE
JOHNSON



CARMEN GRIMALDO, as Natural Guardian
of STEPHANY HARBOTTLE GRIMALDO,
and as Administrator and/or Personal
Representative of the ESTATE OF EDWARD
HARBOTTLE QUIROS, deceased, and on
behalf of Decedent's survivors, and
EDUARDO HARBOTTLE CHINCHILLA, as
Co-Administrator and/or Co-Personal
Representative of the ESTATE OF EDWARD
HARBOTTLE QUIROS, deceased, and on
behalf of Decedent's survivors, EDUARDO
HARBOTTLE CHINCHILLA, surviving
Father, FLOR DE MARIA QUIROS
ALVARADO, surviving Mother and
STEPHANY HARBOTTLE GRIMALDO,
surviving Daughter,

      Plaintiffs,

v.

TACA CORP., Parent Corporation for its
wholly owned Subsidiaries: AVIATECA,
S.A., TACA INTERNATIONAL AIRLINES,
S.A., and AMERICAN CENTRAL
CORPORATION; AVIATECA, S.A.;
AMERICAN CENTRAL CORPORATION;
C.I.T. LEASING CORPORATION and
INTERNATIONAL LEASE FINANCE
CORPORATION,

      Defendants.

## COMPLAINT

Plaintiffs, CARMEN GRIMALDO, as Natural Guardian of STEPHANY HARBOTTLE GRIMALDO, and as Co-Administrator and/or Co-Personal Representative of the ESTATE OF EDWARD HARBOTTLE QUIROS, deceased, and on behalf of his survivors as herein defined, and EDUARDO HARBOTTLE CHINCHILLA, as Co-Administrator and/or Co-Personal Representative of the ESTATE OF EDWARD HARBOTTLE QUIROS, deceased, and on behalf of his survivors as herein defined, sue Defendants, TACA CORP. (TACA), parent corporation of its wholly owned subsidiaries: AVIATECA, S.A., TACA INTERNATIONAL AIRLINES,

S.A. (TACA AIRLINES), and AMERICAN CENTRAL CORPORATION; CIT LEASING CORPORATION (CIT); INTERNATIONAL LEASE FINANCE CORPORATION (ILFC); AVIATECA, S.A. (AVIATECA); and AMERICAN CENTRAL CORPORATION (ACC) and allege:

## ALLEGATIONS AS TO ALL COUNTS

1. This is a wrongful death action brought pursuant to the Warsaw Convention (codified at 49 U.S.C. § 1502, *et seq.*), the Florida Wrongful Death Act, and other statutes or laws this Court finds applicable.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the Warsaw Convention, a treaty of the Untied States. The Court has supplemental jurisdiction over Plaintiffs' other claims.

3. At all times material, Plaintiff, CARMEN GRIMALDO, was, is and/or will be duly appointed Co-Administrator and/or Co-Personal Representative of the ESTATE OF EDWARD HARBOTTLE QUIROS, deceased.

4. At all times material, Plaintiff, CARMEN GRIMALDO, was a resident of Panama. Plaintiffs' decedent was a resident of Costa Rica.

5. At all times material, Plaintiff, EDUARDO HARBOTTLE CHINCHILLA, was, is and/or will be duly appointed Co-Administrator and/or Co-Personal Representative of the ESTATE OF EDWARD HARBOTTLE QUIROS, deceased.

6. At all times material, Plaintiff, EDUARDO HARBOTTLE CHINCHILLA, was a resident of Costa Rica. Plaintiff's decedent was a resident of Costa Rica.

7. Plaintiffs, CARMEN GRIMALDO, as Natural Guardian of STEPHANY HARBOTTLE GRIMALDO, and EDUARDO HARBOTTLE CHINCHILLA, the persons designated and authorized to act as the Co-Personal Representatives of the ESTATE OF EDWARD HARBOTTLE QUIROS, and bring this action in their representative capacities on behalf of the following potential beneficiaries:

      (a)    STEPHANY HARBOTTLE, minor daughter of decedent;

      (b)    EDUARDO HARBOTTLE CHINCHILLA, father of decedent; and

      (c)    FLOR DE MARIA OUIROS ALVARADO, mother of decedent.

8. Defendant CIT is a Delaware corporation doing business and authorized to do business in Dade County, Florida. At all times material, CIT owned the aircraft, bearing U.S. Identification Number N125GU, hereinafter identified and through a predecessor in interest, and leased it in the United States to AVIATECA. The lease was signed by AVIATECA, "by and through Its United States branch." The original signatory was Orlando Hotusing, Aviateca's Regional and Administrative Manager U.S.A. Subsequent lease amendments and agreements were signed in Miami, Florida by AVIATECA's attorney, a resident of Miami, Florida.

9. Defendant ILFC is a foreign corporation doing business in Dade County, Florida which leased the aircraft bearing U.S. Identification Number N125GU, to Defendants AVIATECA/TACA. Said lease was assigned to CIT.

10. Defendant ACC is a Florida corporation with its principal place of business in Dade County, Florida, and it is a wholly owned and operated subsidiaries of TACA.

11. Defendant TACA was, at all times material to this Complaint, a foreign corporation doing business in Miami, Dade County, Florida, as well as in several other states, which has its principal place of business in the United States, said location being at 5885 Northwest 18th Street, Building 2200, Miami, Florida 33159; and at the Miami International Airport.

12. Defendant AVIATECA was, at all times material to this Complaint, a foreign corporation doing business in Miami, Dade County, Florida, and in several other states; which has its principal place of business in the United States, said location being at 5885 Northwest 18th Street, Building 2200, Miami, Florida 33159; and at the Miami International Airport.

13. Defendant TACA AIRLINES was, at all times material to this Complaint, a foreign corporation authorized to do business and doing business in Miami, Dade County, Florida, and in several other states which has its principal place of business in the United States, located at 5885 Northwest 18th Street, Building 2200, Miami, Florida 33159; and at the Miami International Airport.

14. At all times material hereto, TACA was the parent corporation which operated its wholly owned subsidiary corporations AVIATECA, TACA AIRLINES and ACC, in addition to NICA and LACSA, as one airline company, referred to hereinafter as the "ACC Joint Venture." TACA controlled all of these subsidiaries without any respect for customary and required corporate formalities. As such, TACA operated these subsidiaries as the "alter egos" of one another and as the alter ego of TACA; and/or as a joint venture with TACA as the controlling principal corporation of these subsidiaries,

15. Defendant TACA and its wholly owned and controlled subsidiaries AVIATECA, TACA AIRLINES, and ACC, at all times material, were engaged in a joint venture and joint enterprise for the purpose of running a large airline in the United States of America in public transportation pursuant to the Federal Aviation Regulations, and more specifically, Part 129, *et seq*. The joint enterprise of TACA and its wholly owned and operated subsidiaries is contractually governed by Florida law. This joint venture will hereinafter be referred to as the "ACC Joint Venture."

16. In operating the "ACC Joint Venture," TACA and its subsidiaries have abused the corporate formalities and attempted by ruse to establish that they have separate corporate identities for the purpose of defrauding United States and particularly Florida citizens and consumers.

17. For all practical and legal purposes, TACA and its subsidiaries AVIATECA, TACA AIRLINES, and ACC are one and the same company which are engaged in a joint venture and enterprise, despite their purportedly separate *de jure* existence(s).

4

18.   Evidencing this joint venture/enterprise and the ruse and fraud upon consumers are the following facts, gleaned from only the preliminary discovery allowed to date:

a.   AVIATECA claims under oath to have "no employees' at all in the United States, yet operates a substantial business at Miami International Airport, both for cargo and passengers.  Indeed, the "Aviateca" name is prominently displayed in numerous places in the airport, including signage at the departure level, the arrival level and the ticket counter.

b.   All of the "Aviateca" employees working at Miami International Airport are apparently employed by ACC, or another Florida corporation that subcontracts with ACC.

c.   All of the substantial maintenance performed on the "Aviateca" aircraft in Florida is contracted for and paid for by ACC.  Such maintenance in Florida and elsewhere is subject to the supervision and approval of the Federal Aviation Administration, without which the Aviateca aircraft cannot be operated in the United States or Florida.

d.   All of AVIATECA's sales, marketing and ticketing in Florida and the United States is handled by TACA and ACC; these operations are substantial in scope and involve a marketing approach directed almost exclusively to United States citizens and Florida citizens in particular.

e.   ACC holds itself out as "ACC Airlines," effectively establishing to the world that it is itself an airline, intentionally blurring any distinction between it and TACA/AVIATECA as a separate entity.

f.   At the very least, ACC's existence is a corporate ruse to allow TACA/AVIATECA to claim, as it has here, that it employs no one in Florida, while at the same time maintaining a substantial, even predominant and principal, presence in Florida.

g.   The United States and in particular the State of Florida is the worldwide principal place of business of the TACA Corporation, its subsidiaries, and its "ACC Joint Venture."  The combined operations of the TACA Corporation and its subsidiaries, including passenger and cargo revenues; and the marketing and sales effort generated through the Miami

Headquarters Office of TACA clearly establish this "ACC Joint Venture's" principal place of business is indeed Miami, Florida.

        h.      TACA/AVIATECA holds itself out to the public in Miami, Florida, and elsewhere in the United States as having a substantial presence in Miami, Florida, as herein indicated, yet defrauds those some consumers who seek redress in Florida by hiding behind the legal fiction that it is not present in Florida.

        i.      TACA Corporation and its subsidiaries, including AVIATECA, leases all of its aircraft through negotiations conducted by American counsel in Miami, Florida. The lease agreements for the aircraft are signed on TACA/AVIATECA's behalf by that same lawyer in Miami, Florida,

      19.      At all times material hereto, Defendants TACA Corporation and its subsidiaries individually, and/or the "ACC Joint Venture," owed a duty of care to the Plaintiffs and the decedent. The "ACC Joint Venture" was a common carrier engaged in the business of transporting fare-paying passengers on regularly scheduled flights on aircraft owned, leased, operated, managed and maintained by their agents and/or employees, acting within the course and scope of their employment. As a common carrier, the "ACC Joint Venture" was obliged to provide the highest degree of care to its passengers, including Plaintiffs' decedent.

      20.      On August 9, 1995, the Defendants individually and/or the "ACC Joint Venture" was responsible for the operation of a Boeing 737-200 series aircraft, registered in the United States. The aircraft was en route to San Salvador, El Salvador, from Miami, Florida, when suddenly and without warning, it crashed near San Salvador. All persons on board, including Plaintiffs' decedent, died in the crash. Plaintiffs' decedent was lawfully on board the aircraft as a passenger and as such, was owed the highest possible duty of care.

      21.      The Plaintiffs have complied with all conditions precedent to this action,

## COUNT I

### NEGLIGENCE AGAINST TACA, ITS SUBSIDIARIES, AVIATECA, TACA AIRLINES, ACC AND THE ACC JOINT VENTURE

Plaintiffs adopt and reallege every allegation contained in paragraphs 1 through 21 and further allege:

22. At all times material hereto, Defendants TACA Corporation and its wholly owned and operated subsidiaries individually, and/or the "ACC Joint Venture" were responsible for the operation, inspection and maintenance of the aircraft in question, and therefore, owed the highest duty of care to Plaintiffs' decedent.

23. Defendants TACA Corporation and its wholly owned and operated subsidiaries individually, and/or the "ACC Joint Venture," by and through their agents, employees and representatives, were negligent in at least the following particulars:

    a. failing to properly inspect the aircraft and its system, including but not limited to the aircraft's navigation and radar systems, wing surfaces, and other structural components, to ensure their proper operation;

    b. failing to properly or timely maintain the aircraft and its system, including but not limited to the aircraft's navigation and radar systems, wing surfaces, and other structural components, to ensure their proper operation;

    c. failing to operate the aircraft in such manner as to provide safe and adequate transportation to the passengers, including failure to avoid known adverse flying conditions;

    d. failing to adequately or properly train their employees and/or their agents regarding proper inspection, maintenance and operation of the aircraft;

    e. failing to adequately and properly train their employees and agents to obtain and/or head landing and approach information in order to make a safe landing, and failure to train their air crews in the proper operation of Boeing 737 aircraft;

  f. failing to properly and adequately warn the passengers on Flight 901 of the known and dangerous conditions of said aircraft.

 24. Defendants TACA Corporation and its wholly owned subsidiaries individually, and/or the "ACC Joint Venture, " should have known that the aforesaid acts or omissions were likely to result in injuries or death to passengers aboard the subject aircraft.

 25. The above-described conduct directly and proximately caused the crash and all of the Plaintiffs' resulting damages.

## COUNT II

### NEGLIGENCE AND VICARIOUS LIABILITY AGAINST CIT AND ILFC

 Plaintiffs adopt and reallege every allegation contained in paragraphs 1 through 25 and further allege:

 26. At all times material, CIT leased to TACA Corporation/AVIATECA, the "ACC Joint Venture," through an assignment to ILFC the fatal aircraft, a Boeing 737-200 series, which had been registered and certified in the United States of America by the Federal Aviation Administration (FAA).

 27. CIT and ILFC, by and through its agents, employees and representatives, were negligent in at least the following particulars:

  a. failing to properly inspect or monitor, oversee or supervise the inspection of the aircraft and its system, including but not limited to the aircraft's navigation and radar systems, wing surfaces, and other structural components, to ensure their proper operation;

  b. failing to properly or timely maintain or monitor, oversee or supervise the maintenance of the aircraft and its systems, including but not limited to the aircraft's navigation and radar systems, wing surfaces, and other structural components, to ensure their proper operation;

  c. failing to operate or monitor, oversee or supervise the operation of the aircraft in such a manner as to provide safe and adequate transportation to the passengers,

including failure to avoid known adverse flying conditions due to inadequate radar capabilities; and

   d. failing to adequately or properly train or monitor, oversee or supervise the training of employees and/or agents regarding proper inspection, maintenance and operation of the aircraft.

  28. At all times material hereto, CIT and ILFC, by and through its agents, employees and representatives, knew or should have known that the aforesaid acts or omissions were likely to result in injures or death to passengers aboard the subject aircraft.

  29. At all times material to this Complaint, CIT and ILFC by and through its agents, employees and representatives, performed the aforesaid acts or omissions with reckless indifference for the life and safety of the passengers and crew members aboard the said aircraft.

  30. At all times material hereto, such acts and omissions on the part of CIT and ILFC constituted willful, wanton and grossly negligent misconduct.

  31. As lessor of tho aircraft, a dangerous instrumentality, TACA, AVIATECA, the "ACC Joint Venture", CIT and ILFC are vicariously liable for the negligent acts and omissions of its lessee, TACA/AVIATECA, in causing the crash of Flight 901.

  32. The above-described conduct directly and proximately caused the crash and all of the Plaintiffs' resulting damages.

## COUNT III

### WILLFUL MISCONDUCT AGAINST AVIATECA, TACA, AVIATECA, TACA AIRLINES, ACC AND THE ACC JOINT VENTURE

  Plaintiffs adopt and reallege every allegation contained in paragraphs 1 through 32 and further allege:

  33. At all times material, Defendants TACA, AVIATECA, TACA AIRLINES, ACC and the "ACC Joint Venture," individually and/or as "ACC Joint Venture" owed a duty to the passengers on board Flight 901 and in particular to Plaintiffs' decedent, to ensure the safety of the subject aircraft on the ground or in the air, with the highest degree of care, and to exercise

the highest degree of care to prevent injury of any kind to the passengers, and in particular to Plaintiffs' decedent.

34. Defendants, TACA, AVIATECA, and ACC, individually and/or the "ACC Joint Venture," willfully failed to exercise the required degree of care in transporting the decedent, and securing the safety of Flight 901, and willfully failed in their duties regarding operation of Flight 901 on the ground and in the air, in a hazardous manner which intentionally violated operative safety procedures and/or the applicable standard of care, with the knowledge that such violations could cause injury to the passengers, and with reckless disregard for the consequences of their misconduct.

35. Specifically, the Defendants TACA, AVIATECA. ACC AND THE "ACC JOINT VENTURE," individually and/or the "ACC Joint Venture," willfully and knowingly failed to exercise the required degree of care and was grossly negligent in at least the following particulars:

    a. knowingly failing to properly inspect, or ensure others inspected in Florida and elsewhere, the aircraft and its system, including but not limited to the aircraft's navigation and radar systems, wing surfaces, and other structural components, to ensure their proper operation;

    b. knowingly failing to properly or timely maintain, or ensure others maintained in Florida and elsewhere, the aircraft and its systems, including but not limited to the aircraft navigation and radar systems, wing surfaces, and other structural components, to ensure their proper operation;

    c. knowingly failing to operate, or ensure others operated, the aircraft in such a manner as to provide safe and adequate transportation to the passengers, including failing to avoid known adverse flying conditions due to inadequate radar capabilities; and

    d. knowingly failing to adequately or properly train, or ensure others trained in Florida and elsewhere, the flight crew employees regarding proper inspection, maintenance

and operation of the aircraft. Much, if not all, of the pilot and crew training took place in the United States and in Florida, and the inadequacy of this training proximately contributed to the crash.

36. At all times material to this Complaint, the acts and omissions of Defendants individually and/or the "ACC Joint Venture" constituted willful, wanton, reckless and/or grossly negligent misconduct and were committed knowing that such acts and omissions constituted a threat to passengers, including Plaintiffs' decedent.

37. The above-described conduct directly and proximately caused the crash and all of the Plaintiffs' resulting damages.

38. Notwithstanding this knowledge, the Defendants individually and/or the "ACC Joint Venture" and/or its agents and delegates, acting within the course and scope of their employment, performed the aforesaid acts or omissions with reckless indifference and disregard for the life and safety of the passengers aboard the said aircraft.

39. The crash of the above-described flight on August 9, 1995, was caused by such known and reasonably foreseeable acts or omissions.

40. By reasons of the above-stated acts of wanton and willful, reckless and/or grossly negligent conduct, evidencing willful and reckless indifference to the safety, welfare, health, and security of the Plaintiffs' decedent. Defendants are liable to the Plaintiffs for damages, without limitation.

## COUNT IV

### WILLFUL MISCONDUCT, PUNITIVE DAMAGES AND VICARIOUS LIABILITY AGAINST CIT AND ILFC

Plaintiffs adopt and reallege every allegation contained in paragraphs 1 through 40 and further allege:

41. At all times material, CIT leased to TACA/AVIATECA and/or the "ACC Joint Venture," through an assignment from ILFC the fatal aircraft, Boeing 737-200 series registered and certified in the United States of America.

11

42. CIT and ILFC, by and through its agents, employees and representatives, was negligent in at least the following particulars:

    a. knowingly failing to properly inspect or monitor, oversee or supervise the inspection of the aircraft and its system, including but not limited to the aircraft's navigation and radar systems, wing surfaces, and other structural components, to ensure their proper operation;

    b. knowingly failing to properly or timely maintain or monitor, oversee or supervise the maintenance of the aircraft and its systems, including but not limited to the aircraft's navigation and radar systems, wing surfaces, and other structural components, to ensure their proper operation;

    c. knowingly failing to operate or monitor, oversee or supervise the operation of the aircraft in such a manner as to provide safe and adequate transportation to the passengers, including failure to avoid known adverse flying conditions due to inadequate radar capabilities; and

    d. knowingly failing to adequately or properly train or monitor, oversee or supervise the training of employees and/or agents regarding proper inspection, maintenance and operation of the aircraft.

43. At all times hereto, CIT and ILFC, by and through its agents, employees and representatives, knew or should have known that the aforesaid acts of omissions were likely to result in injuries or death to passengers aboard the subject aircraft.

44. At all times material to this complaint, CIT and ILFC, by and through its agents, employees and representatives, performed the aforesaid acts or omissions with reckless indifference for the lives and safety of the passengers and crew members aboard the said aircraft.

45. At all times material hereto, such acts and omissions on the part of CIT and ILFC constituted willful, wanton and grossly negligent misconduct.

46. As lessor of the aircraft, a dangerous instrumentality, to TACA/AVIATECA and/or the "ACC Joint Venture," CIT and ILFC are vicariously liable for the negligent acts and omissions of its lessee, AVIATECA, in causing the crash of Flight 901, and liable to Plaintiffs for exemplary damages.

47. The above-described conduct directly and proximately caused the crash and all of the Plaintiffs' resulting damages.

## COUNT V

### CAUSE OF ACTION FOR WILLFUL MISCONDUCT UNDER THE WARSAW CONVENTION

The allegations of Counts III & IV are incorporated herein by reference.

48. The flight at issue was a flight in international transportation as defined by the Warsaw Convention, 49 U.S.C. § 1502, *et seq.*, in that Plaintiffs' decedent's points of departure and destination were within signatory countries to the Convention and the flights were not purely domestic.

49. The crash and the conduct herein described leading up to the crash constituted an "accident" within the meaning of that term in the Warsaw Convention.

## COUNT VI

### DAMAGES

Plaintiffs seek recovery of all damages available to them under all applicable laws as representatives of the above-named Estate, and for all survivors and/or beneficiaries. These damages include but are not limited to:

    a. pain and suffering and mental anguish of the decedent prior to his death and for his pre-impact fear of death;

    b. loss of society, companionship, guidance and services of the decedent to the survivors, beneficiaries and heirs;

    c. loss of support in money or in kind;

    d. loss of net accumulations;

e.   funeral expenses;

f.   full value of life of the decedent for his wrongful death;

g.   punitive and exemplary damages; and

h.   any other damages to which Plaintiffs, the survivors and/or the beneficiaries may be entitled under applicable law, i.e. the laws of the State of Florida.

**WHEREFORE,** Plaintiffs demand judgment against the Defendants for compensatory and punitive damages, as well as interest and costs.

Plaintiffs further demand a trial by jury of all issues triable as of right by jury.

**DATED** this _____ day of July, 1996.

Respectfully submitted:

SPEISER, KRAUSE & MADOLE, P.C.
Miami Center, 10th Floor
201 South Biscayne Blvd.
Miami, Florida 33131
Tel: 305/375-9400

Gerard R. Lear
Leigh J. Ballen
SPEISER, KRAUSE, MADOLE & LEAR
1300 North Seventeenth St., Ste. 310
Rosslyn, Virginia 22209-3800
Tel: 703/522-7500

Katherine A. Staton
SPEISER, KRAUSE & MADOLE, P.C.
300 Convent Street, Suite 2600
San Antonio, Texas 78205-3796
Tel: 210/230-8900
OF COUNSEL:

Kenneth J. Weil
FLOYD, PEARSON, RICHMAN, GREER, WEIL, BRUMBAUGH & RUSSOMANNO, P.A.
Miami Center, 10th Floor
201 South Biscayne Blvd.
Miami, Florida 33131
Tel: 305/373-4000

By: _/s/ Kenneth J. Weil_
Kenneth J. Weil
Fla. Bar No. 135495

**Counsel for Plaintiff Carmen Grimaldo, as Natural Guardian of Stephany Harbottle Grimaldo**

George J. Fowler, III
Samuel A. Giberga
RICE FOWLER
Place St. Charles, 36th Floor
201 St. Charles Avenue
New Orleans, Louisiana 70112
Tel: 504/523-2600

Tony Jobe
225 Baronne St., Ste. 904
New Orleans, Louisiana 70112
Tel: 504/524-9700

Ed Curtis
CURTIS & CURTIS, P.A.
P.O. BOX 21607
Fort Lauderdale, Florida 33335
Tel: 305/525-6652

By: _/s/ Edward R. Curtis_
Edward R. Curtis
Florida Bar No. 236845

**Counsel for Plaintiff Eduard Harbottle Chinchilla**

u1/barbara/0204/pleadings/harbottl.fed

96-2133

CIV-UNGARO-BENAGES

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**MAGISTRATE JUDGE JOHNSON**

**I (a) PLAINTIFFS**

SEE ATTACHED

**DEFENDANTS**

SEE ATTACHED

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** _____
(EXCEPT IN U.S. PLAINTIFF CASES)

DADE  1:96CV2133  UUBENAGES  JOHNSON

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Kenneth J. Weil, Esq. (305) 373-4000

**ATTORNEYS (IF KNOWN)**
John Murray, Esq.

**(d) CIRCLE COUNTY WHERE ACTION AROSE:**
(DADE), MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

**II. BASIS OF JURISDICTION** (PLACE AN X ONE BOX ONLY)
- [ ] 1. U.S. Government Plaintiff
- [X] 3. Federal Question (U.S. Government Not a Party)
- [ ] 2. U.S. Government Defendant
- [ ] 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (For Diversity Case Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated of Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)
49 U.S.C. Sec. 1502, et seq.
Civil Action for wrongful death - Jurisdiction pursuant to 28 U.S.C. Sec. 1331 (Warsaw Convention)

**IVa.** _____ days estimated (for both sides) to try entire case

**V. NATURE OF SUIT** (PLACE AN X IN ONE BOX ONLY)

| A CONTRACT | A TORTS | B FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUS |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 States Reappointment |
| ☐ 120 Marine | [X] 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **A PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury-Product Liability | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. B |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 630 Liquor Laws | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) B | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 640 R.R. & Truck | **B SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits B | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending B | ☐ 650 Airline Regs | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholder's Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 660 Occupational Safety/Health | **A LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12USC3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 690 Other | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability |  |  |  | ☐ 720 Labor Management Relations B | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **B PRISONER PETITIONS** |  | ☐ 730 Labor Management Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence |  | ☐ 740 Railway Labor Act | **A FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure B | ☐ 442 Employment | Habeas Corpus |  | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General * |  | ☐ 791 Employee Ret. Inc Security Act B | ☐ 871 IRS-Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty |  |  |  | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other * |  |  |  | ☐ 890 Other Statutory Actions * |
| ☐ 290 All Other Real Property |  | ☐ 550 Civil Rights * A or B |  |  |  | * A or B |

**VI. ORIGIN** (PLACE AN X IN ONE BOX ONLY)
- [X] 1. Original Proceeding
- [ ] 2. Removed From State Court
- [ ] 3. Remanded from Appellate Court
- [ ] 4. Refiled
- [ ] 5. Transferred from another district (Specify)
- [ ] 6. Multidistrict Litigation
- [ ] 7. Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT**
CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23
**DEMAND $** _____
Check YES only if demanded in complaint:
**JURY DEMAND:** [X] YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See Instructions):
JUDGE _____ DOCKET NUMBER _____

**DATE** August 2, 1996
**SIGNATURE OF ATTORNEY OF RECORD** Kenneth Weil
KENNETH J. WEIL

UNITED STATES DISTRICT COURT
S/F I-2
REV. 9/94

FOR OFFICE USE ONLY: Receipt No. 665719
Date Paid: 08/02/96
Amount: 120.00
M/ifp: _____

CARMEN GRIMALDO, as Natural Guardian of STEPHANY HARBOTTLE GRIMALDO, and as Administrator and/or Personal Representative of the ESTATE OF EDWARD HARBOTTLE QUIROS, deceased, and on behalf of Decedent's survivors, and EDUARDO HARBOTTLE CHINCHILLA, as Co-Administrator and/or Co-Personal Representative of the ESTATE OF EDWARD HARBOTTLE QUIROS, deceased, and on behalf of Decedent's survivors, EDUARDO HARBOTTLE CHINCHILLA, surviving Father, FLOR DE MARIA QUIROS ALVARADO, surviving Mother and STEPHANY HARBOTTLE GRIMALDO, surviving Daughter,

Plaintiffs,

v.

TACA CORP., Parent Corporation for its wholly owned Subsidiaries: AVIATECA, S.A., TACA INTERNATIONAL AIRLINES, S.A., and AMERICAN CENTRAL CORPORATION; AVIATECA, S.A.; AMERICAN CENTRAL CORPORATION; C.I.T. LEASING CORPORATION and INTERNATIONAL LEASE FINANCE CORPORATION,

Defendants.